IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| 21ST MORTGAGE CORPORATION | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:10CV214-HSO-JMR |
| | § | |
| NATIONAL SECURITY FIRE & | § | |
| CASUALTY COMPANY | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

BEFORE THE COURT are the Motion for Summary Judgment, or Alternatively, for Partial Summary Judgment [45] filed by Defendant National Security Fire & Casualty Company on April 14, 2011, and the Motion for Partial Summary Judgment [47] filed by Plaintiff 21st Mortgage Corporation on the same date. Both Motions are fully briefed. After due consideration of the record, the submissions on file, and the relevant legal authorities, the Court finds that Defendant is entitled to partial summary judgment as to the proper calculation of the amount of the mortgagee claim, whether the claim was denied, and Plaintiff's punitive damages claim, but that material questions of fact remain as to whether payment was unreasonably delayed and whether Plaintiff may recover extra-contractual damages. Defendant's Motion should be granted in part and denied in part, and Plaintiff's Motion should be denied.

I. BACKGROUND

Plaintiff filed its Complaint [1-3] in the County Court of Pearl River County, Mississippi, on or about April 12, 2010. Plaintiff's claims arise out of Defendant's

alleged refusal to pay a claim for the total destruction by fire of a mobile home on or about June 1, 2009. Plaintiff held a lien on the mobile home, which Defendant insured through a Comprehensive Mobile Homeowner's Policy [the "Policy"]. Compl., at pp. 4-5. The Policy contained a mortgagee clause which provided that Plaintiff's interest would not be invalidated by any act or neglect of the mortgagor or owner of the property. *Id*. at p. 5. When Plaintiff requested payment after the fire based upon the mortgagee clause, Defendant allegedly denied its claim, taking the position that the fire was caused by an intentional act of the mortgagor's husband. *Id*. at p. 5. According to the Complaint, after submitting an Amended Sworn Statement in Proof of Loss on or about December 11, 2009, Plaintiff attempted to negotiate with Defendant for payment of the claim, to no avail. *Id*. at p. 6. Plaintiff asserts that Defendant refused to negotiate, and continues to refuse to pay in accordance with the mortgagee clause. *Id*.

Defendant argues that it investigated and sought proof of the amount of the mortgagee claim, and that it tendered what it believed was equal to or in excess of the mortgagee claim, $38,379.79, by letter dated February 1, 2010. Def.'s Mem. [46] in Supp. of its Mot. [45], at pp. 2, 16. The tender was returned by letter dated February 11, 2010. *Id*.

The Complaint advances claims against Defendant for breach of contract, breach of the covenant of good faith and fair dealing, and bad faith denial of insurance claim. *Id*. at pp. 6-7. Plaintiff demands actual, consequential, and punitive damages, plus interest, costs, and fees. *Id*. at p. 7. After this lawsuit

commenced, Defendant re-tendered the $38,379.79 on February 4, 2011.[1]  Def.'s Mem. [46] in Supp. of its Mot. [45], at p. 16.  Plaintiff accepted this payment on February 8, 2011.  *Id.*

## II. DISCUSSION

A.  Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure states, in relevant part, that

> [a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(a).

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal

---

[1] Defendant's Memorandum [46] states that the date the amount was re-tendered was February 4, 2001, Def.'s Mem. [46] in Supp. of its Mot. [45], at p. 16, but a review of the entire record reveals that the actual date was February 4, 2011, *see* Notice of Acceptance of Unconditional Tender of Payment [34], at p. 1.

memoranda.  *Booth,* 75 F. Supp. 2d at 543.

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *Id.*  With regard to "materiality," only those disputes or facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.  *Id.* (citing *Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial."  *Id.* (quoting *Topalian v. Ehrman,* 954 F.2d 1125, 1138 (5th Cir. 1987)).  Because this Court has subject matter jurisdiction over this lawsuit by virtue of diversity of citizenship, 28 U.S.C. § 1332, it must apply the substantive law of Mississippi in resolving the issues presented here.  *See Erie R.R. Company v. Tompkins*, 304 U.S. 64 (1938).

B.  Defendant's Motion

Defendant insists that any delay in its eventual payment to Plaintiff was not the result of any denial of the claim or undue delay on its part, but was occasioned by Plaintiff's failure to cooperate.  Def.'s Mem. [46] in Supp. of its Mot. [45], at p. 2.  Defendant contends that it promptly investigated and sought proof of the amount of Plaintiff's mortgagee claim with no success, and that it tendered an amount which it believed was equal to or in excess of the claim.  *Id.*  However, Plaintiff returned the tender.  *Id.*

Defendant's Motion requests judgment as follows: (1) that the Court determine that the proper measure of the mortgagee claim under the Policy is the

amount owed on the debt on the date of loss; (2) that Defendant did not deny Plaintiff's mortgagee claim, or alternatively, that Defendant had an arguable or reasonable basis to initially deny the claim; (3) that Defendant did not unreasonably delay payment of the mortgagee claim to Plaintiff; (4) that Plaintiff is not entitled to punitive damages; and (5) that Plaintiff is not entitled to extra-contractual damages. Def.'s Mot. [45], at pp. 1-3.  The Court will address each of these arguments in turn.

  1.  <u>Proper Measure of Mortgagee Claim</u>

Defendant maintains that the proper measure of Plaintiff's mortgagee claim is the amount mortgagor owed on the debt on the date of loss.  Def.'s Mem. [46] in Supp. of its Mot. [45], at p. 5.  According to Defendant, this amount was $38,027.68. *Id.* at p. 8 (citing Pl.'s 30(b)(6) Dep. by and through Amanda Wolfe, at pp. 125-126, attached as Ex. "2" to Def.'s Mot. [45] (calculating payoff amount as of June 1, 2009, by subtracting escrow balance credit of $439.32 from the principal balance of $38,467.00)).

Plaintiff counters that Defendant's attorney wrote the prosecuting attorney for Pearl River County, who was handling the criminal arson case against mortgagor's husband, and stated that he considered the balance due Plaintiff as of July 1, 2009, to be liquidated at $38,379.97.  Pl.'s Resp. [53], at pp. 5-6 (citing July 23, 2009, Letter, attached as Ex. "12' to Pl.'s Resp. [53]).  Plaintiff contends that this statement is "an unequivocally clear admission by [Defendant] that it considered the balance due [Plaintiff] as of July 1, 2009, to be liquidated at $38,379.97." *Id.* at p. 6. Plaintiff argues that Buddy Shivley, Defendant's Rule 30(b)(6) representative, likewise agreed that the Defendant understood its duty to pay Plaintiff additional

charges incurred and to be incurred on the indebtedness owed Plaintiff.  *Id.*

Plaintiff explains that, in order to calculate the payoff amount owed by mortgagor, it took the principal balance of $38,467.00 as of June 1, 2009, the date of loss, and subtracted the $439.32 credit balance in insured's escrow account.  Plaintiff then added per diem interest through July 1, 2009, to arrive at a sum of $38,379.97.  Pl.'s Mem. [54] in Supp. of its Resp. [53], at p. 21.  Over the course of the following months, when Defendant requested an "updated payoff amount," Plaintiff followed the same procedure, adding the appropriate per diem interest.  *Id.*  In a November 30, 2009, proof of loss, and a December 11, 2009, revised proof of loss, Plaintiff demanded $40,374.09.  *Id.* at pp. 20-21 (citing Nov. 30, 2009, Letter, attached as Ex. "30" to  Resp. [53]; Dec. 11, 2009, Letter, attached as Ex. "24" to Resp. [53]).

In its Reply, Defendant asserts that Plaintiff "does not dispute that the mortgagee claim is the amount owed on the date of loss."  Def.'s Reply [57], at p. 1.  A review of Defendant's Motion and Plaintiff's Response, however, reveals that the crux of the parties' dispute on this issue seems to be whether Plaintiff's application of per diem interest to the balance after June 1, 2009, is properly included in calculating the amount owed under the mortgagee clause.

Plaintiff here was clearly, and indisputably, the named mortgagee on this Policy.  Policy Dec. [45-1], at p. 32 (stating mortgagee name was "21ST MORTGAGE CORP").  The limit of insurance under Coverage A for the "Mobile Home" was $46,000.00, while the limit of insurance under Coverage B for "Related Private Structures" was $2,300.00.  *Id.*  The limit on the Mobile Home residence itself clearly exceeded the amount to which Plaintiff claims it was entitled.  It is also undisputed

that Defendant denied payment on any claim by the mortgagor, who is not a party to this matter.

An insurance policy is a contract.  *Mink v. Andrew Jackson Casualty Ins. Co.*, 537 So. 2d 431, 434 (Miss. 1988).  Where its terms are clear, its interpretation is a question of law.  *Corban v. United Services Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (quoting *Noxubee County Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004)).  The starting point for the Court is the language of the Policy itself, with reference to Mississippi law.  The clause which is the subject of this case reads, in relevant part, as follows:

> **15.  Mortgage, Secured Party, and Lender's Loss Payable Clause** – If a mortgagee is named on the "declarations," a loss payable under Coverage A or Coverage B will be paid to the mortgagee and "you," as interests appear.
> * * *
> If "we" deny "your" claim, that denial does not apply to a valid claim of the mortgagee, secured party, or lender if the mortgagee, secured party, or lender has:
> a.   notified "us" of change of ownership, occupancy, or substantial change in risk of which the mortgagee, secured party, or lender became aware;
> b.   paid the premium due under this policy on demand if "you" neglected to pay the premium; and
> c.   submitted a signed, sworn proof of loss within 60 days after receiving notice from "us" if "you" failed to do so.
> All "terms" of this policy apply to the mortgagee, secured party, or lender unless changed by this clause.
> * * *
> **Payment to Mortgagee** – If "we" pay the mortgagee for a loss and deny payment to "you", "we" are subrogated, up to the amount "we" paid for the loss, to all the rights of the mortgagee granted under the mortgage on the property.  Subrogration will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.
>
> At "our" option, "we" may pay to the mortgagee the whole principal on the mortgage plus the accrued interest.  In this event, "we" shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Policy [45-1], at pp. 28-29, attached as Ex. "A" to Def.'s Mot. [45].

Mississippi law mandates that such clauses be incorporated into fire insurance policies on buildings taken out or renewed after July 1, 1989. Miss. Code § 83-13-9. This statute reads, in relevant part, as follows:

> Each fire insurance policy on buildings taken out or renewed on or after July 1, 1989, by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz:
>
> Loss or damage, if any, under this policy, shall be payable to (here insert the name of the party), as _____ mortgagee (or trustee), as _____ interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, . . . . Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of _____ claim. . . .

*Id.*

This statute addresses a standard union mortgage clause, which is in essence a separate contract of insurance between a mortgagee and an insurer. *Necaise v. Oak Tree Sav. Bank, SSB*, 645 So. 2d 1311, 1315 (Miss. 1994). The practical effect is the issuance of two policies, one to the mortgagor for the difference between the mortgage debt and the policy limit, and the other in favor of the mortgagee to the extent of the mortgage debt. *Id.* at 1315–16 (quoting *United States v. Sentinel Fire Ins. Co.*, 178 F.2d 217, 227 (5th Cir. 1949)).

The Mississippi Supreme Court has explained that the phrase in the statute "as its interest may appear," refers to the amount of the debt owed the mortgagee and secured by the mortgage. *National Farmers Union Property & Cas. Co. v. First Columbus Nat. Bank*, 669 So. 2d 767, 773 (Miss. 1996) (quoting COUCH ON INSURANCE 2d (Rev. ed.) § 42:696 (1982)). This term includes the actual amount of debt and any accrued interest. *Id.* (citing *Weems v. American Sec. Ins. Co.,* 486 So. 2d 1222, 1229 (Miss. 1986) ["*Weems II*"]).

Mississippi law provides that the amount of a debt owed under a mortgagee clause is the full amount of the mortgage debt at the time of the loss. *See, e.g., National Farmers Union*, 669 So. 2d at 771; *Weems II,* 486 So. 2d at 1228–29. This is the amount Defendant is obligated to pay Plaintiff pursuant to the mortgagee clause. Under both the Policy and Mississippi law, Defendant could have, at its option, paid Plaintiff the accrued interest as well. Miss. Code § 83-13-9; Policy [45-1], at pp. 28-29, attached as Ex. "A" to Def.'s Mot. [45]. However, the narrow question presented in Defendant's Motion is the proper measure of mortgagee claim, meaning the amount Defendant was obligated to pay Plaintiff pursuant to the Policy and Mississippi law.[2]

In sum, the law appears settled on this question. Defendant has shown that

---

[2]There is some evidence that Defendant requested an updated "payoff amount," *see* July 22, 2009, Letter from Defense Counsel to Pl., attached as Ex. "15" to Pl.'s Mot. [47], as well as forms to effectuate assignment of the note and security interest on the loan, *see* Nov. 6, 2009, Letter from Defense Counsel to Pl., attached as Ex. "25" to Pl.'s Mot. [47]; July 22, 2009, Letter from Defense Counsel to Pl., attached as Ex. "15" to Pl.'s Mot. [47], which arguably could have indicated Defendant's intent to exercise its option under the Policy and statute to pay interest after the date of loss and receive a full assignment and transfer of the mortgage, *see* Miss. Code § 83-13-9; Policy [45-1], at pp. 28-29, attached as Ex. "A" to Def.'s Mot. [45]. However, this question seems to go more to whether payment was unreasonably delayed and, if so, why it was delayed, which are separate inquiries.

there is no genuine dispute as to any material fact, such that it is entitled to judgment as a matter of law on the proper method for calculating the mortgagee claim.  As Defendant argues, the measure of Plaintiff's mortgagee claim is the full amount of the mortgage debt at the time of the loss, June 1, 2009, including any accrued interest as of that date.  The Court will therefore grant summary judgment on this issue.

      2.      <u>Whether the Claim was Denied</u>

Defendant disputes Plaintiff's characterization of an October 5, 2009, letter as a denial of the mortgagee claim.  Def.'s Mem. [46] in Supp. of its Mot. [45], at p. 9.  Defendant contends that this correspondence reflected its ongoing investigation, and did not constitute a denial.  *Id.* at p. 10.  It maintains that the intent of the letter was to confirm Plaintiff's receipt of the copy of a separate September 1, 2009, denial letter to the insured mortgagor, to review insurance policy provisions, to pose questions, and to request documentation concerning Plaintiff's claim.  *Id.*  Defendant references subsequent correspondence between the parties, which pertain only to the amount of the claim and efforts to document that amount, in support of its position.  *Id.* at pp. 10-11.  The issue presented is whether there was a denial of coverage, or if not, any delay in payment.  The October 5, 2009, letter lies at the heart of this question.  The Court must examine the letter and determine whether it constitutes a sufficient denial or refusal to honor an obligation under Mississippi law.  *Essinger v. Liberty Mutual Fire Ins. Co.*, 529 F.3d 264, 272–73 (5th Cir. 2008) ["*Essinger I*"].

In *Essinger I*, the Fifth Circuit explained that, if there is no denial of a claim or failure to honor an obligation, then there is no jury issue of bad faith.  *Essinger I*,

529 F.3d at 274. The Court held that "[a]t some point, an insurance company's conduct may reveal such a refractory attitude, such as rejecting reasonable responses from its claimants despite verbal indications of flexibility, that a denial might arise from what superficially appears to be a negotiation." *Id.* However, the *Essinger I* Court found no dispute of material fact on that point, finding that the insurer "explicitly held open the door to considering further information from the [insureds] on why more was owed." *Id.* at 273. The Fifth Circuit affirmed the district court's dismissal of the insureds' bad faith claim in that case, because it concluded that no denial ever occurred. *Id.* at 272.

In the letter here, Defendant's attorney states that "there *appears* to be no 'valid claim of the mortgagee'" under the Policy. Oct. 5, 2009, Letter [53-16], at p. 3, attached as Ex. "16" to Pl.'s Resp. [53] (emphasis added). After discussing Mississippi Code § 83-13-9, defense counsel indicates that "the present situation *appears* to be a situation which is not protected by the statutory mortgage clause." *Id.* (emphasis added).

> The initial review of 21st Mortgage's mortgagee claim *appears* not to fall within the coverage provided in the policy or in the saving provision required by the Mississippi statute. As previously mentioned, the facts of this matter are relatively unusual. I solicit your review, comments and documentation so that a *final determination* can be made.
>
> I request copies of any documentation in your file relevant to this review. If you have legal authority for a position that the mortgagee clause is applicable, please forward such information.

*Id.* (emphasis added).

The letter addresses two scenarios, one in which "it is determined that there is no mortgagee coverage under the policy," and another where "it is determined that the

-11-

mortgagee clause provides coverage." *Id.*

After thoroughly reviewing the relevant exhibits, including the October 5, 2009, letter, the Court is persuaded that the only reasonable interpretation is that the letter is indicative of an ongoing investigation, and was not a denial of the claim. Defendant did not deny the claim, and in fact, presented alternatives indicating it might still pay the claim. Oct. 5, 2009, Letter [53-16], at p. 3, attached as Ex. "16" to Pl.'s Resp. [53]. This correspondence also attempted to open a dialogue with Plaintiff about the claim. *Id.* The Court will grant Defendant's Motion on this issue.

3.   <u>Whether Payment was Unreasonably Delayed</u>

Plaintiff contends that Defendant unreasonably delayed paying it the mortgagee claim, while Defendant asserts that it "promptly, carefully and fully investigated" the claim and that any delay was caused by Plaintiff. Def.'s Mem. [46] in Supp. of its Mot. [45], at p. 11. Under a fire policy's standard mortgage clause, Mississippi law provides that a mortgagee is entitled to payment, and its right to recover will not be invalidated by an act or negligence of the mortgagor. *Weems v. American Sec. Ins. Co.*, 450 So. 2d 431, 436 (Miss. 1984) ["*Weems I*"]. Moreover, "[n]o act or default of any person other than the mortgagee affects the rights of the mortgagee to recover in case of loss." *Id.* (quoting *Hartford Fire Ins. Co. v. Associates Capital Corp.*, 313 So. 2d 404, 407 (Miss. 1975)).

Buddy Shivley, Defendant's Rule 30(b)(6) representative, testified that as of June 23, 2009, when he received the report of Defendant's claim adjuster, Matt Maxwell, he had no reason to contact Maxwell about his recommendation, because Defendant "knew [it was] going to pay the mortgagee." Def.'s 30(b)(6) Dep. by and

through Buddy Shivley, at p. 56, attached as Ex. "7" to Pl.'s Resp. [53]. Defendant first tendered funds to Plaintiff almost eight months later, on February 1, 2010, in the amount of $38,379.97. Def.'s Mem. [46] in Supp. of its Mot. [45], at p. 4. Plaintiff submits evidence which it claims supports its position that the delay in this initial tender or the ultimate payment was unreasonable. Matt Maxwell June 23, 2009, Claim Report, attached as Ex. "10" to Pl.'s Resp. [53] ("If you agree with my findings, I recommend payment to mortgage company, 21st Mortgage Company."); Def.'s 30(b)(6) Dep. by and through Buddy Shivley, at p. 56, attached as Ex. "7" to Pl.'s Resp. [53] (testifying that there was no reason to contact Maxwell regarding his claim report, because Defendant knew that it was going to pay mortgagee).

Defendant argues that the delay in paying the mortgagee claim was due to Plaintiff's refusal to provide accurate information and documentation on the amount of the mortgagee claim. Def.'s Mem. [46] in Supp. of its Mot. [45], at p. 11. However, Plaintiff argues that it provided the figures requested by Defense counsel. Pl.'s Mem. [54] in Supp. of its Resp. [53]. There appears to have been some confusion over whether Defendant was attempting to pay the mortgage debt at the time of the loss, or whether it was seeking to "payoff" the loan, which would result in a full assignment of the mortgage to Defendant. *See* Nov. 6, 2009, Letter from Defense Counsel to Pl., attached as Ex. "25" to Pl.'s Mot. [47]; July 22, 2009, Letter from Defense Counsel to Pl., attached as Ex. "15" to Pl.'s Mot. [47]; *see also* Miss. Code § 83-13-9; Policy [45-1], at pp. 28-29, attached as Ex. "A" to Def.'s Mot. [45].

Considering the record as a whole, and reviewing the evidence presented in the light most favorable to the non-moving party and resolving all doubt in its favor,

as the Court must, the Court is of the opinion that there remain genuine disputes of material fact as to whether payment was unreasonably delayed. Summary judgment in Defendant's favor is thus inappropriate on this point.

### 4. Whether Plaintiff Can Recover Punitive Damages

Plaintiff claims that it is entitled to recover punitive damages based upon Defendant's conduct in handling this claim. Mississippi Code § 11-1-65(1)(a) provides that

> [p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

Miss. Code § 11-1-65(1)(a).

Punitive damages are reserved for extreme cases and should be "allowed only with caution and within narrow limits." *Snow Lake Shores Property Owners Corp. v. Smith*, 610 So. 2d 357, 362 (Miss. 1992) (quoting *Consolidated American Life Ins. Co. v. Toche*, 410 So. 2d 1303, 1304-05 (Miss. 1982)). The Mississippi Supreme Court has explained that

> [t]he kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries but injuries inflicted in the spirit of wanton disregard for the rights of others. In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule.

*Summers ex rel. Dawson v. St. Andrews Episcopal School, Inc.*, 759 So. 2d 1203, 1215 (Miss. 2000) (citing *Fowler Butane Gas Co. v. Varner*, So. 2d 226, 233 (Miss. 1962)).

As noted previously, the Fifth Circuit has held that, if there is no claim denial,

then there is no jury issue of bad faith, and dismissal of the insured's bad faith claim is appropriate.  *Essinger I*, 529 F.3d at 272, 274.  The Court has already determined that Defendant is entitled to summary judgment on the issue of claim denial; the Court is further of the view that summary judgment is appropriate on the issue of bad faith punitive damages.

Plaintiff has not adduced sufficient evidence to show that Defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud" as required to support a claim for punitive damages under Mississippi law.  *See* Miss. Code § 11-1-65(1)(a).  The record does not support a finding by clear and convincing evidence that Defendant's alleged conduct rises to the level necessary to justify punitive damages.  Summary judgment in Defendant's favor is therefore appropriate as to the punitive damages claim.

     5.    <u>Whether Defendant is Entitled to Summary Judgment on the Claim for Extra-Contractual Damages</u>

As the Fifth Circuit noted in *Essinger I,* and detailed more fully in *Essinger v. Liberty Mutual Fire Ins. Co.*, 534 F.3d 450 (5th Cir. 2008) ["*Essinger II*"], extra-contractual damages may be available as an intermediate form of relief to make an insured whole, even where punitive damages are not justified.  *Essinger II,* 534 F.3d at 451; *Essinger I*, 529 F.3d at 274.  Extra-contractual damages "may be appropriate where the insurer lacks an arguable basis for delaying or denying a claim, but the conduct was not sufficiently egregious to justify the imposition of punitive damages."  *Essinger II,* 534 F.3d at 451 (citing *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992)).

The Court has determined that there are genuine disputes of material fact as to whether the payment to Plaintiff was unreasonably delayed. For this reason, genuine disputes of fact also exist as to whether Defendant had an arguable basis for delaying payment. Summary judgment on Plaintiff's extra-contractual damages claim will be denied.

C.  Plaintiff's Motion

Plaintiff requests summary judgment as to Defendant's liability for its alleged breach of contract, breach of the covenant of good faith and fair dealing, and bad faith denial of Plaintiff's mortgagee insurance claim. Pl.'s Mot. [47], at p. 1. For the reasons stated below, the Court finds that Plaintiff's Motion must be denied.

1.  Breach of Contract Claim

In order to prevail on its breach of contract claim, Plaintiff must show by a preponderance of the evidence that a valid contract exists, that Defendant breached the contract, and that damages resulted from the breach. *Southern Healthcare Services, Inc. v. Lloyd's of London*, 20 So. 3d 84, 92 (Miss. Ct. App. 2009) (citing *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992)). In this case, Plaintiff alleges that Defendant breached the insurance contract by failing to promptly honor a covered claim. Pl.'s Mem. [48] in Supp. of its Mot. [47], at pp. 10-11. Plaintiff maintains that Defendant unreasonably delayed in providing it a proof of loss form and in paying its mortgagee claim. *Id.* at pp. 11-12.

Defendant responds that any delay was caused by its review and investigation of the claim. Def.'s Mem. [50] in Supp. of its Resp. [49], at p. 8. Defendant maintains that it never denied the claim. *Id.* Rather, it was seeking to obtain the

amount of the mortgage debt and supporting documentation. *Id.* at p. 9. Defendant avers that the undocumented payoff figure Plaintiff provided to the mortgagor included interest through July 1, 2009, and that the "mortgage balance on date of loss" was not provided. *Id.* Defendant argues that it was attempting to fully investigate the claim of both the insured and the mortgagee, as required by law, prior to either making a payment or denying coverage. *Id.* at p. 17.

Defendant maintains that Plaintiff places too much emphasis on Defendant's claim adjuster Matt Maxwell's report. The adjuster's work and the claim report "merely initiate the claim review," and the report is submitted to Defendant "for further investigation, if needed, and final determination on the claims." *Id.* at p. 11. Defendant argues that the claim report did not end the investigation. *Id.* at p. 18. It blames Plaintiff's alleged failure to cooperate in the investigation and review as the cause of any delay in payment. *Id.* at p. 19. Defendant also maintains that it was justified in being skeptical based upon Plaintiff's "various undocumented figures." *Id.* at p. 21. Defendant asserts that "[c]learly [Plaintiff] was not cooperating with the investigation and making a proper documented mortgagee claim." *Id.* at p. 23.

Reviewing the evidence presented in the light most favorable to the non-movant, the Court is of the opinion that there remain genuine disputes of material fact as to Plaintiff's breach of contract claim. These disputes include, but are not limited to, whether Defendant unreasonably delayed payment of Plaintiff's mortgagee claim and whether Plaintiff failed to cooperate in Defendant's investigation. Summary judgment is inappropriate on this point.

2.     Breach of the Covenant of Good Faith and Fair Dealing Claim

Implicit in every insurance contract is a covenant of good faith and fair dealing. *Langston v. Bigelow*, 820 So. 2d 752, 756 (Miss. Ct. App. 2002) (quoting *Hartford Accident and Indem. Co. v. Foster*, 528 So. 2d 255, 281 (Miss. 1988)). The parties to such a contract agree that neither will do anything which will injure the right of the other to receive the benefit of the agreement. *Id.* (quoting *Foster*, 528 So. 2d at 756). The Mississippi Court of Appeals has held that, without a breach of contract, a breach of the covenant of good faith and fair dealing claim fails as a matter of law. *Frye v. Southern Farm Bureau Cas. Ins. Co.*, 915 So. 2d 486, 492 (Miss. Ct. App. 2005).

In addressing this claim, the parties advance arguments similar to those presented with respect to the breach of contract claim. Pl.'s Mem. [48] in Supp. of its Mot. [47], at pp. 12-13; Def.'s Mem. [50] in Supp. of its Resp. [49], at pp. 24-26. For the reasons previously stated with respect to the breach of contract claim, summary judgment is likewise inappropriate on this claim.

3.     Bad Faith Denial Claim

As Fifth Circuit has explained, if there is no denial of a claim or failure to honor an obligation, then there is no jury issue of bad faith. *Essinger I*, 529 F.3d at 274. Because the Court has found that there was no "denial" of Plaintiff's claim, it will grant summary judgment in favor of Defendant on this issue. Plaintiff's request for summary judgment in its favor on its bad faith claim will therefore be denied.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should

be granted in part and denied in part, and Plaintiff's Motion for Partial Summary Judgment should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, the Motion for Summary Judgment, or Alternatively, for Partial Summary Judgment [45] filed by Defendant National Security Fire & Casualty Company on April 14, 2011, should be and hereby is **GRANTED IN PART**, as to the proper calculation of the amount of the mortgagee claim, whether the claim was denied, and Plaintiff's punitive damages claim, **and DENIED IN PART**, as to whether payment was unreasonably delayed and whether Plaintiff may recover extra-contractual damages. The proper measure of Plaintiff's mortgagee claim is the full amount of the mortgage debt at the time of the loss, June 1, 2009, including any accrued interest as of that date, and Defendant did not deny the claim. Plaintiff's punitive damages claim should be and hereby is **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, the Motion for Partial Summary Judgment [47] filed by Plaintiff 21st Mortgage Corporation on April 14, 2011, should be and hereby is **DENIED.**

**SO ORDERED AND ADJUDGED**, this the 11th day of July, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE